# APPENDIX OF UNREPORTED DECISIONS

*Falkland Investments, Ltd. v. Lipaev*,
2003 WL 22073070 (Wn. App. 2003)

*Rosales v. Unifund CCR, Partners, et al.*,
2008 WL 5156681 (N.D. Ill. 2008)

*Witt v. Westfield Acceptance Corp.*,
2002 WL 826372 (S.D. Ind. 2002)

Not Reported in P.3d                                                                                  Page 1
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
**(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))**

NOTE: UNPUBLISHED OPINION, SEE RCWA 2.06.040

Court of Appeals of Washington,
Division 1.
FALKLAND INVESTMENTS, LTD., Respondent,
v.
Oleg LIPAEV and Olga Lipaev, husband and wife, Appellants.
**No. 50548-3-I.**

Sept. 8, 2003.

Appeal from Superior Court of King County.
Steven Patrick Recor, Attorney at Law, Bellevue, WA, for Appellants.

Timothy John Gawron, Eric Robert McVittie, Attorney at Law, and Svetlana Spivak, LeGros Buchanan & Paul, Seattle, WA, for Respondent.

UNPUBLISHED OPINION

KENNEDY, J.

*1 Oleg and Olga Lipaev appeal the trial court's order denying their motion to vacate a default judgment entered against them in favor of Falkland Investments, Ltd. The Lipaevs argue, inter alia, that the trial court lacked subject matter jurisdiction and personal jurisdiction over Mr. Lipaev, that Falkland failed to register with the Secretary of State and thus was not authorized to sue them in Washington State, that they appeared informally in the lawsuit and thus were entitled to notice of the motion for default, but if not, they nevertheless had a good excuse for not making a formal appearance sooner than they did. They also argue that they made a prima facie showing of a valid defense to the allegations in the Complaint. We reject the Lipaevs' challenges to the court's jurisdiction and to Falkland's right to sue them in Washington. But we reverse the trial court's denial of the motion to vacate the default judgment, and remand for entry of an order vacating that judgment and for such other proceedings thereafter as shall be consistent with this opinion.

FACTS

Falkland Investments, Ltd., ('Falkland') is a Liberian corporation that was in the business of lending money to companies in the Russian fishing industry until 1998. Since 1998, Falkland's presence in Washington has been for the sole purpose of **collecting** on outstanding **debts** pending its dissolution. Falkland was owned by Oleg Nikitenko until January 2001, when he sold it to one of Falkland's directors, David Gens. Oleg Nikitenko is the brother of Olga Lipaev, who is married to the appellant Oleg Lipaev. Mr. Lipaev entered the United States under an H1-B visa, which permitted him to work in the United States but did not grant permanent residency. In 1999, he and his wife purchased a home in Bellevue, Washington, and resided there together until Mr. Lipaev left permanently for Russia on September 8, 2001. Mr. Lipaev's visa expired on December 18, 2001. Mrs. Lipaev remained in the home in Bellevue until October 31, 2001, when she, too, left for Russia. The Lipaevs' home remained listed for sale with a local realtor, in that the property had not yet sold when the Lipaevs returned to Russia.

While in the United States, Mr. Lipaev worked for another company that was owned by his brother-in-law, Global Seafoods of North America, LLC. While so employed, he spent half of his time in Bellevue and the other half transacting business in Russia, some of which was on behalf of Falkland. In September and October 1999, Falkland granted Mr. Lipaev two powers of attorney. Both powers were executed in London, England. The first, a general power of attorney, described Mr. Lipaev as a resident of Vladivostok, Russia. The second power granted Mr. Lipaev authority to oversee certain bankruptcy litigation in Russia and to **collect** a **debt** from Vladivostok Base Trawling and Refrigeration Fleet (VBTRF) a Russian company to which Falkland had loaned $16,000,000. VBTRF declared bankruptcy in 1998. Its president at the time of the bankruptcy was Nikolai Nikitenko, the father of Oleg Nikitenko and Olga Lipaev.

*2 At some point, Gens became concerned with Mr. Lipaev's activities, and after consulting with Oleg Nikitenko, Gens revoked both powers of attorney on

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.241    Page 3 of 16

Not Reported in P.3d                                                              Page 2
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
**(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))**

September 19, 2001. Although Nikitenko no longer owned any interest in Falkland by then, he and Gens were partners in other business undertakings, and they kept each other informed about the bankruptcy proceedings in Russia. Gens reported to Nikitenko that Mr. Lipaev had failed to account for monies received from the bankruptcy proceedings in Russia.

On October 24, 2001, Falkland served two copies of a Summons and Complaint upon the Lipaevs by leaving the copies with Mrs. Lipaev at the Bellevue residence. Mr. Lipaev claims that when she departed for Russia a week later, Mrs. Lipaev neglected to take the copies of the Summons and Complaint with her. Mrs. Lipaev's proficiency in English is disputed. The Lipaevs claim that her English is poor and that she lacks understanding of the American legal system. But her brother Oleg Nikitenko claims that both Olga and Oleg Lipaev are proficient in English, and that after Olga was served with the Summons and Complaint, and before she departed for Russia, she stopped by his office and discussed the Summons and Complaint at length.

Nikitenko also claims that before Mr. Lipaev departed for Russia, he and Olga visited him at his office and admitted that they had collected $9,200,000 from the sale of VBTRF's assets, that they were not going to turn this money over to Falkland, and that Falkland would not be able to do anything about it once they were back in Russia.

The Complaint alleges that Mr. Lipaev 'received money and/or other assets that belong to Falkland and refuses to account for them or surrender them.' Clerk's Papers at 5. Falkland filed the Complaint, along with a Motion for Issuance of a Prejudgment Writ of Attachment against the Lipaevs' Bellevue residence, on November 16, 2001. On November 20, 2001, Falkland mailed a copy of the motion, together with a notice of their right to request a hearing regarding the writ, to the Lipaevs at their Bellevue residence. On November 21, 2001, the court issued the Prejudgment Writ of Attachment.

On December 11, 2001, Falkland filed a Motion for Order of Default. A copy of the motion was mailed to the Lipaevs at their Bellevue residence on December 10, 2001. The court apparently entered an Order of Default on December 20, 2001, but the original order has been lost. Falkland has submitted a conformed copy of the court's Order of Default, but insofar as we can ascertain from the record on appeal, has failed to comply with the requirements of RCW 5.48.020, which establishes a procedure to replace lost original records.

On December 18, 2001, Falkland faxed a copy of the Summons and Complaint to Oleg Lipaev at a fax number in Russia. Falkland did not include a copy of the pending motion for default in the faxed transmission. Mr. Lipaev received the fax, and claims that he promptly faxed a copy to a friend of his in Renton, Washington, who holds law degrees from both the United States and Russia. Upon hearing back from his friend and learning, allegedly for the first time, that he was being sued by Falkland, Lipaev asked his friend to help him find legal counsel a process that was made more difficult by the fact that it was the Christmas season. On January 25, 2002, Lipaev received, signed, and returned a fee agreement to the law firm that subsequently appeared for the Lipaevs on February 11, 2002.

*3 Mr. Lipaev claims that upon learning that Falkland was suing him, he called David Gens and denied that he had any monies belonging to Falkland. Gens denies that any such telephone call took place. Oleg Nikitenko claims that Mr. Lipaev called him and threatened to hire a hit man and to have Nikitenko and other members of his wife's family killed if Nikitenko cooperated with Gens in prosecuting the lawsuit.

On December 24, 2001, Falkland filed a Motion for a Partial Default Judgment. In the motion, Falkland claimed that it is owed substantially more than $6,000,000 but that it was unable, at that juncture, to trace more than $6,000,000 from the Russian bankruptcy manager in the VBTRF bankruptcy proceedings into the hands of Oleg Lipaev, and so judgment was sought for that amount. Notice of the pending motion was mailed to the Lipaevs at their Bellevue residence on December 21, 2001. Notice of the motion was not faxed to Mr. Lipaev in Russia.

On January 2, 2002, without conducting a hearing on the amount owed, and without entering findings of fact and conclusions of law as is required by CR 55(b)(2), the court entered a default judgment against the Lipaevs in the amount of $6,000,000.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.242    Page 4 of 16

Not Reported in P.3d                                                                                                Page 3
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))

As aforementioned, on February 11, 2002, the Lipaevs entered a notice of appearance through a Bellevue law firm, expressly stating that the appearance was made without waiver of various jurisdictional issues. On March 29, 2002, the Lipaevs filed a Motion to Vacate the Default Judgment, Quash the Writ of Attachment, and Dismiss for Lack of Jurisdiction. In a declaration supporting the Motion to Vacate, Mr. Lipaev denies having obtained any funds belonging to Falkland. In support of this, Lipaev presented a declaration from the bankruptcy manager in the Russian bankruptcy proceedings stating that as the bankruptcy manager, only he had the authority to sell assets of the bankruptcy estate and to distribute the proceeds among the creditors, that Falkland was in the third category of creditors to be paid, that in the accounting department of VBTRF he located the official bank account that belonged to Falkland, and that he caused proceeds distributed to Falkland to be deposited directly into that account. A record verifying the deposit was included with the declaration.

The manager also averred that according to the official records of the bankruptcy court, the principals of Falkland were Titiana Nagovskiy, Marieluiise Grassl and Liliane Baumgartner, and that nowhere in the records at his disposal was the name of David Gens to be found, as president of Falkland or in any other capacity.

In response to this, Falkland filed a declaration from a Korean lawyer claiming, without supporting documentation or statement of personal knowledge of the truth of the allegation, that the aforesaid bankruptcy manager had been discharged from his office and that the new bankruptcy manager was pursuing claims against the old manager in an effort to overturn distributions that the old manager made on behalf of VBTRF. Falkland also claimed that the bank account into which Falkland's monies had been deposited was opened by Lipaev, who then withdrew the funds for personal use.

*4 The court denied the motion to vacate on April 15, 2002. In doing so, the court rejected the Lipaevs' jurisdictional challenges, found that the Lipaevs had been aware of the lawsuit but willfully failed to defend against it, and were not diligent in moving to set the default judgment aside, once it was entered. The court made no findings regarding the viability of the Lipaevs' claim to have a valid defense to Falkland's claims against them indeed, the court struck a proposed finding that would have stated that the Lipaevs presented no valid defense to Falkland's claims. Instead, the court rested its ruling on its findings that the Lipaevs speak, read and understand English, that they knew about the lawsuit and willfully decided not to defend it, that they told their relatives that they took Falkland's money and that Falkland could not do anything about it, that delaying the end of the lawsuit could endanger the lives of witnesses, and that once they learned of the lawsuit, the Lipaevs did not act with due diligence in that they waited two months after learning of the lawsuit to appear in the proceedings. Given its denial of the Motion to Vacate, the Court did not reach the Lipaevs' pending motion for a change of venue to Russia.

The court also signed a stipulated order staying the sheriff's sale of the Lipaevs' residence, authorizing a private sale in order to maximize potential profits from the sale, and ordering that the sale proceeds be paid into the registry of the court pending further court order.

This appeal followed.

DISCUSSION

1. Jurisdiction

The first question in this case is whether the court had jurisdiction over the subject matter and over the parties. Superior courts in Washington have general jurisdiction over all cases in equity. See Article 4, sec. 10, Washington Constitution. Mr. Lipaev contends that the King County Superior Court lacked jurisdiction because the cause of action arose in Russia, rather than in King County, and he did not reside in the county at the commencement of the action. Whether the court had jurisdiction is a question of law, reviewed de novo. *Crosby v. County of Spokane,* 137 Wn.2d 296, 301, 971 P.2d 32 (1999).

Falkland's Complaint alleges conversion of funds belonging to Falkland and a breach of fiduciary duty arising under the powers of attorney.

Conversion and breach of a fiduciary duty arising from a contract are both torts that have traditionally been characterized as 'transitory' in nature. See

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.243    Page 5 of 16

Not Reported in P.3d                                                                    Page 4
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))

*Washington State Bank v. Medalia Healthcare L.L.C.,* 96 Wn.App. 547, 554, 984 P.2d 1041 (1999); *review denied,* 140 Wn.2d 1007 (2000); *Micro Enhancement Intern., Inc. v. Coopers & Lybrand, LLP,* 110 Wn.App. 412, 433, 40 P.3d 1206 (2002). Transitory actions include those actions that, at common law, might be tried wherever personal service can be obtained. See *Shelton v. Farkas,* 30 Wn.App. 549, 553, n. 6, 635 P.2d 1109 (1981). We conclude that the King County Superior Court has subject matter jurisdiction over the lawsuit.

**\*5** RCW 4.12.025 states, in part: "(1) An action may be brought in any county in which the defendant resides, or, if there be more than one defendant, where some one of the defendants resides at the time of the commencement of the action."It is undisputed that Mrs. Lipaev, who is one of the defendants, still resided in King County at the time of the commencement of the action. Thus, the remaining jurisdictional issue turns on whether the trial court obtained personal jurisdiction over Oleg Lipaev by reason of proper service upon Mrs. Lipaev. Falkland relies on the substitute service of process provisions of RCW 4.28.080.

RCW 4.28.080 states, in relevant part:

Service made in the modes provided in this section shall be taken and held to be personal service. The summons shall be served by delivering a copy thereof, as follows:

....

(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.

The phrase 'house of {his or her} usual abode' is to be liberally construed to effectuate service and to uphold jurisdiction of the court. *Sheldon v. Fettig,* 129 Wn.2d 601, 609, 919 P.2d 1209 (1996).'{T}he dual purpose of the statute is to (1) provide means to serve defendants in a fashion reasonably calculated to accomplish notice and (2) allow injured parties a reasonable means to serve defendants.' *Sheldon,* 129 Wn.2d at 608. Thus, the court must ask whether the Lipaevs' Bellevue residence was a center of domestic activity for Mr. Lipaev such that he would 'most likely receive notice of the pendency of a suit' if notice of the Complaint were to be left there with his wife. *Sheldon,* 129 Wn.2d at 610.

In his declaration, Mr. Lipaev acknowledges that his wife received the Summons and Complaint, but contends that she did not understand the importance of the document. The substituted service statute does not require that the recipient understand the importance of the document, but only that she be a person of suitable age and discretion then residing at the defendant's usual abode. Although Mr. Lipaev left for Russia in September, he and his wife still owned the Bellevue residence, Mrs. Lipaev was still living there, and as Mr. Lipaev stated in his affidavit, 'lots of different documents were sent to me {at the Bellevue residence} all the time.'Clerk's Papers at 151. We conclude that the Bellevue residence remained the Lipaevs' 'usual abode' within the meaning of the substituted service statute, liberally construed, until the end of October 2001, when Mrs. Lipaev left to join her husband in Russia.

Because the court acquired subject matter jurisdiction of this transitory action and personal jurisdiction over both Mr. and Mrs. Lipaev when Mrs. Lipaev was served with two copies of the Summons and Complaint at the Bellevue residence on October 24, 2001, the court did not err in refusing to dismiss the lawsuit on jurisdictional grounds.

2. Ability of Falkland to Sue in Washington

**\*6** The Lipaevs also contend that the court lacked jurisdiction to enter a default judgment because Falkland was not registered to do business in Washington and, therefore, cannot bring a civil action in the State. RCW 23B.15.010(1) states that a corporation 'may not **transact business** in this state until it obtains a certificate of authority from the secretary of state.'But transacting business does not include the maintaining or defending of an action or suit, or securing or **collecting debts**. RCW 23B.15.010(2)(a); RCW 23B.15.010(2)(h). The Lipaevs do not contend that Falkland was doing anything more in Washington than trying to **collect** its **debts**. There being no evidence to the contrary, the trial court did not err in finding that Falkland 'never transacted business in Washington State' and in concluding that Falkland 'was not required to register with the Washington Secretary of State.'Clerk's Papers at 271-72.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.244    Page 6 of 16

Not Reported in P.3d                                                              Page 5
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))

3. Irregularities in Obtaining the Default Judgment

The Lipaevs assert that the default judgment must be vacated because the record does not contain a signed original Order of Default and because the default judgment is not supported by findings of fact and conclusions of law as mandated by CR 55(b)(2). These issues are mooted by our decision that the default judgment must be vacated on other grounds. Accordingly, we need not address them.

4. Informal Appearance

CR 55 provides that '{a}ny party who has appeared in the action for any purpose shall be served with a written notice of motion for default {.}' CR 55(a)(3). If the court enters an order of default in a case where the defaulting party has appeared but has not been provided notice of the motion for order of default, the party is entitled as a matter of right to have the judgment set aside. Shreve v. Chamberlin, 66 Wn.App. 728, 731-32, 832 P.2d 1355 (1992). The Lipaevs argue that they appeared when Mr. Lipaev called Gens to dispute the allegations in the Complaint. Because we are vacating the judgment on other grounds, we do not need to reach this issue.

5. Good Cause to Set Aside the Default Judgment?

The Lipaevs contend that the default judgment should be vacated under CR 60 because they put forth a 'substantial and compelling defense on the merits,' and they 'demonstrated both excusable neglect and due diligence.' Appellant's Opening Brief at 29-30. A trial court's decision to grant or deny a motion to vacate a default judgment is reviewed for abuse of discretion. Allstate Ins. Co. v.. Khani, 75 Wn.App. 317, 323, 877 P.2d 724 (1994). A party seeking an order to vacate a default judgment must show:

(1) that there is substantial evidence supporting a prima facie defense to the claim upon which the court entered default judgment; (2) the moving party's failure to timely appear and answer the claim was due to mistake, inadvertence, surprise or excusable neglect; (3) the moving party acted with due diligence upon notice of entry of the default judgment in moving to have it set aside; and (4) no substantial hardship will result to the opposing party. White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

*7 The four factors are not weighted equally. If it clearly appears that a strong defense on the merits exists, the courts will spend scant time inquiring into the reasons that resulted in the entry of the order of default. Id. This is because default judgments are generally disfavored in the law, in that it is the policy of the law that controversies be determined on the merits rather than by default. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). This policy is balanced against the necessity of having a responsive and responsible system that mandates compliance with judicial summons. Id. The fundamental principle in balancing these competing policies is whether or not justice is being done. Id. at 582. Abuse of discretion is less likely to be found if the default judgment is set aside than if it is not. White, 73 Wn.2d at 351-52.

The trial court concluded that the Lipaevs 'failed to show 'good cause' under CR 55 and CR 60 for their failure to timely appear' and defend the action. Although the court concluded at Clerk's Papers 274 that the Lipaevs 'offered no defense to the allegations contained in Falkland's complaint {,}' at Clerk's Papers 272 the court struck and initialed the corresponding proposed finding of fact which would have said that the claim that the monies from the sale of VBTRF's assets were deposited into Falkland's bank account was not a substantial defense in light of Falkland's claim that Oleg Lipaev opened the account without its authority and converted the funds to his own use. Thus, the court's conclusion that the Lipaevs offered no viable defense cannot stand because it is not supported by the findings of fact. It appears that the trial court based its denial of the Motion to Vacate Default Judgment entirely on its findings that the Lipaevs did not timely appear in the action and that they failed to exercise due diligence in appearing and defending after the entry of the Default Judgment.

But it is undisputed that both Mr. and Mrs. Lipaev were in Russia when the Motion for Order of Default was filed and when the Default Judgment was entered, and that when Mr. Lipaev received the faxed Summons and Complaint on December 18, 2001, he promptly sent a copy to a friend who then helped him to locate counsel in the United States a process that was made more difficult by the impending Christmas

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

holidays. It is also undisputed that when Falkland faxed the Summons and Complaint to Mr. Lipaev on December 18, 2001, it failed to include a copy of the then-pending Motion for Order of Default which had been filed on December 11, 2001 and scheduled for hearing on December 20, 2001. Although Falkland dutifully mailed copies of various court documents to the Lipaevs at their Bellevue residence address, some of the documents were mailed only the day before the court took action, and Gens must have known that the Lipaevs were no longer living at the Bellevue residence in any event through his frequent contacts with Mrs. Lipaev's brother Oleg Nikitenko, if by no other means. Moreover, it is clear from the record that the law firm representing Falkland knew that the Lipaevs had returned to Russia based on the firm's contacts with the realtor who was handling the sale of the Lipaevs' Bellevue residence.

*8 It also appears from the record that many of the documents required to support the Lipaevs' Motion to Vacate Default Judgment, including the declaration of the manager of the Russian bankruptcy proceeding with respect to VBTRF, had to be obtained in Russia, transmitted to the United States, and translated from Russian into English before they were filed with the court. Under these undisputed facts, the record fails to support the trial court's finding that the Lipaevs failed to exercise due diligence in moving to set aside the default judgment following its entry on January 2, 2002.

The court's ruling can be upheld only if the fact that the Lipaevs took no steps to obtain counsel so as to defend against the lawsuit until December 18, 2001, when Falkland faxed the Summons and Complaint to Mr. Lipaev in Russia, is a sufficient basis, in and of itself, for denying the motion to vacate. Given the difficulties inherent in obtaining representation in the United States when one is trying to accomplish that task from Russia, we see no lack of due diligence on the part of the Lipaevs from and after December 18, 2001 when Mr. Lipaev claims to have first become aware of the lawsuit.

The court also found that Falkland would experience substantial hardship if the default judgment were vacated because Falkland had expended funds bringing the lawsuit and obtaining the prejudgment writ of attachment, and because lives of witnesses could be endangered. But it is unclear from the order how much weight the court put on the allegation that lives of witnesses would be endangered, because at another place in the order the court struck and initialed a proposed finding that the Lipaevs' had 'unclean hands' because they had threatened the lives of witnesses who might support Gens in prosecuting the lawsuit. It would thus appear that the court gave little if any weight to the allegation that the Lipaevs had threatened the lives of witnesses. As for Falkland's expenditure of funds to pursue the lawsuit, this is true of any plaintiff in any lawsuit.

In the final analysis, the Lipaevs' failure to appear and defend before December 18, 2001 when Falkland faxed the Summons and Complaint to Mr. Lipaev in Russia must be measured against the strength of the defense offered against Falkland's claims. Because the trial court declined to consider the strength and viability of the Lipaevs' prima facie defense, and that is the factor to be given the most weight in considering a motion to vacate a default judgment, see *White, 73 Wn.2d at 352-53*, we must perforce find an abuse of trial court discretion. The Lipaevs have certainly presented a prima facie defense to Falkland's claims, and while Falkland claims that Lipaev himself opened the Falkland account into which the bankruptcy manager deposited funds belonging to Falkland, this, like the claim of the Korean lawyer that the bankruptcy manager was corrupt, are bare allegations at this stage of the proceedings. Credibility issues abound in this case, and discovery is far from complete, so that on the present record it is impossible to determine who is telling the truth and who is not. The fundamental principal in balancing the competing policies of mandating compliance with judicial summons for protection of our system of justice and determining controversies on the merits is 'whether or not justice is being done.' *Griggs, 92 Wn.2d at 582*. On the present record, it is impossible to come to the firm conclusion that justice has been done.

*9 Accordingly, although we affirm the trial court's rulings with respect to jurisdiction, proper service, and Falkland's ability to pursue its claims in the Washington courts, we reverse the trial court's rulings with respect to the motion to set aside the Order of Default and the Default Judgment, and we remand for such further proceedings as shall be consistent with this opinion. We specifically affirm the trial court's ruling requiring the proceeds from the sale of the Lipaevs' Bellevue residence to be paid into the regi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.246    Page 8 of 16

Not Reported in P.3d
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)
(Cite as: 2003 WL 22073070 (Wash.App. Div. 1))

Page 7

stry of the court pending a determination of the merits of the controversy. We leave to the trial court's sound discretion the question of whether Russia or the United States is the most appropriate forum for determining the merits of the controversy between these parties. That issue is yet to be decided by the trial court and we decline to address it on appeal.

Wash.App. Div. 1,2003.
Falkland Investments, Ltd. v. Lipaev
Not Reported in P.3d, 118 Wash.App. 1030, 2003 WL 22073070 (Wash.App. Div. 1)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.247   Page 9 of 16

Westlaw.

Slip Copy                                                                                                                          Page 1
Slip Copy, 2008 WL 5156681 (N.D.Ill.)
(Cite as: 2008 WL 5156681 (N.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Armando C. ROSALES III, Plaintiff,
v.
UNIFUND CCR PARTNERS, et al., Defendants.
No. 08 C 3533.

Dec. 5, 2008.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tiffany Nicole Hardy, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.

Amy Zoe Knapp, Joseph Paul Kincaid, Kathleen Ann Kelley, Swanson, Martin & Bell, Chicago, IL, for Defendants.

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge.

*1 This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we grant the motion to dismiss and dismiss the remaining state law claims without prejudice.

### BACKGROUND

Plaintiff Armando C. Rosales III (" Rosales") alleges that Defendant Unifund CCR Partners (" Unifund") is engaged in the business of collecting "charged-off debts" owed by consumers. (A.Compl.Par. 8). Defendant Credit Card Receivables Fund, Inc. and Defendant ZB Limited Partnership are allegedly general partners of Unifund. (A.Compl.Par. 17-18). Unifund allegedly pays only a minimal amount to purchase "charged-off debts" and does not "acquire documentation for each of the accounts, including in particular account agreements signed by the putative debtors."(A.Comp. Par. 14). Rosales claims that in April 2008, Unifund brought an action against Rosales in Illinois state court ("State Action") "for the purpose of collecting three purported credit card debts incurred for personal, family or household purposes."(A.Comp. Par. 21). Unifund allegedly presented certain affidavits in the State Action, but the alleged declarants lacked the personal knowledge to support the affidavits. Rosales brought the instant action and includes in the complaint claims alleging that Unifund used false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.* (Count I), and claims alleging violations of the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.* (Count II). Defendants now move to dismiss the instant action.

### LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.,* 144 F.3d 448, 454-55 (7th Cir.1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.,* 496

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 5156681 (N.D.Ill.)
(Cite as: 2008 WL 5156681 (N.D.Ill.))

Page 2

F.3d 773, 776 (7th Cir.2007) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action....' " *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *Kyle,* 144 F.3d at 455. However, any conclusions pled must " 'provide the defendant with at least minimal notice of the claim,' " *Kyle,* 144 F.3d at 455 (quoting *Jackson v. Marion County,* 66 F.3d 151, 153-54 (7th Cir.1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins,* 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan,* 40 F.3d at 251; *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998) (stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. FDCPA Claims (Count I)

*2 Defendants move to dismiss the FDCPA claims. Defendants argue that the FDCPA was not intended to govern state court pleading requirements, and therefore, Rosales' attempt to portray the instant action as a FDCPA action is improper and this case should be dismissed. The premise of Rosales' case is that Unifund has a policy in regard to the affidavits that it attaches to its complaints in state court actions and that the policy does not comply with the FDCPA. Rosales claims that allegedly false allegations of personal knowledge in the affidavits submitted by Kim Kenney ("Kenney Affidavits"), the media supervisor of Unifund, violated 15 U.S.C. § 1692e of the FDCPA, which states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Debt collectors are prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Defendants argue that Rosales' assertion that the Kenney Affidavits are deficient due to Kenney's lack of personal knowledge is, at best, an argument on the part of Rosales that the affidavits are procedurally defective rather than containing false statements about debt and involve state law evidentiary issues. (Mem.Dis.3); (Reply 2). Rosales maintains that Kenney's allegation of personal knowledge is false and that false statements in state pleadings can constitute violations of the FDCPA. (Ans.7). Neither side has pointed to any controlling precedent on point that addresses the issue of whether submitting an affidavit without personal knowledge in a state court case is a state procedural deficiency or a potentially false representation that is actionable under the FDCPA.

Unifund points to *Washington v. North Star Capital Acquisition, LLC,* 2008 WL 4280139 (N.D.Ill.2008), in which the district court held that failure to attach an assignment to a state court complaint was a violation of the ICAA, not the FDCPA. *Id.* at *2; (Mem.Dis.3). The Court in *North Star* concluded that the plaintiff's claim was "premised on an alleged violation of Illinois state pleading requirements and the FDCPA w[ould] not be used as a vehicle to litigate claims arising under the Illinois rules of civil procedure." *Id.* The Court in *North Star* also noted that "[t]he FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation." *Id.* Similarly, in the instant action, the al-

leged deficiencies in the Kenney Affidavits submitted in the state court proceedings relate to state court pleading requirements rather than the overarching policy concerns behind the FDCPA. *See Carlson v. First Revenue Assur.,* 359 F.3d 1015, 1018 (8th Cir.2004) (stating that "[t]he FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation"); *King v. Resurgence Financial, LLC,* 08 C 3306 (November 3, 2008 minute order) (J. St.Eve). Thus, Rosales' concerns regarding the propriety of the Kenney Affidavits attached to state court pleadings are state concerns and can be addressed by the state courts. Under the federal notice pleading standard, in order to ascertain the claim pled, the court must look to the allegations in the complaint rather than the labels of the causes of action in the complaint. *See, e.g., Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). Rosales has not pled a FDCPA claim merely by listing the act in the complaint and calling her claim a "FDCPA-Class Claim." (A.Compl.5). *See Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir.2008) (stating that "a plaintiff can plead himself out of court by alleging facts that show there is no viable claim").*See also Beier v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 474 (7th Cir.2007) (stating that the FDCPA is not "an enforcement mechanism for other rules of state and federal law"). Therefore, we grant Defendants' motion to dismiss the FDCPA claim.

## II. Remaining State Law Claims (Count II)

*3 Since the only remaining claims in this action are state law claims, we must determine whether we will retain jurisdiction over the remaining claims. Rosales alleges in the amended complaint that the court has supplemental jurisdiction over the state law claims. (A.Compl.Par. 5). Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1252 (7th Cir.1994) (stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has stated that there is no " 'presumption' in favor of relinquishing supplemental jurisdiction" and that a court may retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity,* 479 F.3d 904, 906-07 (7th Cir.2007). The Seventh Circuit has stated that, In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources...." *Timm v. Mead Corp.,* 32 F.3d 273, 277 (7th Cir.1994). We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over the remaining state law claims. Therefore, we dismiss the remaining state law ICAA claims (Count II) without prejudice.

We also note that we previously denied Rosales' motion for class certification and that Rosales has filed a motion for reconsideration of that ruling. In light of the above ruling, we deny the motion for reconsideration as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the FDCPA claims and we decline to exercise jurisdiction over the remaining state law ICAA claims and dismiss the ICAA claims without prejudice. We also deny Rosales' motion for reconsideration as moot.

N.D.Ill.,2008.
Rosales v. Unifund CCR Partners
Slip Copy, 2008 WL 5156681 (N.D.Ill.)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy  
Slip Copy, 2008 WL 5156681 (N.D.Ill.)  
(Cite as: 2008 WL 5156681 (N.D.Ill.))

Page 4

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 826372 (S.D.Ind.)
(Cite as: 2002 WL 826372 (S.D.Ind.))

Page 1

COnly the Westlaw citation is currently available.

United States District Court,
S.D. Indiana,
Indianapolis Division.
Sonia L. WITT and Theothis Allison, Plaintiffs,
v.
WESTFIELD ACCEPTANCE CORP. and Karl T. Ryan, Defendants.
No. IP 00-1001-CS/H.

March 25, 2002.

Daniel A. Edelman, Edelman Combs & Latturner, LLC, Chicago, IL, Clifford W. Shepard, Attorney at Law, Indianapolis, IN, for plaintiffs.

Dean R. Brackenridge, Locke Reynolds, LLP, Henry Efroymson, Ice Miller, Indianapolis, IN, for defendants.

ENTRY ON SUBJECT MATTER JURISDICTION OVER PLAINTIFF WITT'S REMAINING CLAIMS

DAVID F. HAMILTON, Judge.

*1 Plaintiffs Sonia L. Witt and Theothis Allison allege that defendants Westfield Acceptance Corporation and Karl T. Ryan violated the federal Fair Debt Collection Practices Act ( **FDCPA**), 15 U.S.C. § 1692 *et seq.*, and the Indiana Uniform Consumer Credit Code, Ind.Code § 24-4.5-1-101 *et seq.* The case is now before the court for resolution of the court's subject matter jurisdiction over plaintiff Witt's remaining claims. As explained below, the court lacks subject matter jurisdiction over her remaining federal and state law claims.

For purposes of deciding subject matter jurisdiction, the defendants have not raised any factual issues, so the court treats the well-pleaded allegations in the complaint as true. See *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir.1999). According to the complaint, Witt entered into a so-called "payday loan" with a company called Advance America in November 1998. As part of the loan transaction, Witt delivered to Advance America a post-dated check for $180. Witt then failed to repay the loan according to its terms, and her check was dishonored when it was presented for payment.

Advance America assigned the debt to defendant Westfield Acceptance Corporation. In April 1999, defendant Karl Ryan filed suit on behalf of Westfield Acceptance against Witt in a state court. Westfield Acceptance obtained a default judgment for $929, which included treble damages and **attorney fees**. When Witt later sought to refinance her home, the judgment appeared on her credit report. She then paid Westfield Acceptance $1,028.50, which was accepted in January 2000 in satisfaction of the judgment.

Witt claims that Westfield Acceptance and Ryan violated the **FDCPA** first by seeking and then by collecting treble damages. Witt contends that Indiana law does not permit assignment of a creditor's statutory claim for treble damages arising from a dishonored check. See *Hart Conversions, Inc. v. Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind.App.1995).

In a previous ruling issued January 30, 2001, the court found that Witt's **FDCPA** claim based on defendants' act of filing suit to collect treble damages was time-barred because that act occurred more than one year before Witt filed this action on June 19, 2000. See 15 U.S.C. § 1692k(d) (one-year limit). The same reasoning applies to Witt's parallel claim under state law, which also has a one-year statute of limitations. See Ind.Code §§ 24-4.5-5-202 & -203(7). The court also agreed with Magistrate Judge Shields' recommendation, however, that the one-year limit did not bar Witt's claim that defendants had later violated the **FDCPA** by actually collecting the judgment from her, including the award of treble damages. The **FDCPA** prohibits in part the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

*2 By claiming that defendants violated federal law by accepting payment of a facially valid state court judgment, Witt's case presents a problem of subject matter jurisdiction that the court has raised on its own

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.252    Page 14 of 16

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2002 WL 826372 (S.D.Ind.)
(Cite as: 2002 WL 826372 (S.D.Ind.))

initiative. The federal *Rooker-Feldman* doctrine holds that the lower federal courts may not exercise what amounts to appellate jurisdiction over state courts. See *Rooker v.. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)*. Under the *Rooker-Feldman* doctrine, a person who claims that her federal rights were violated by a state court judgment must assert those rights through an appeal of the judgment in the state courts-not by an action in a federal district court-with the only potential federal court review coming from the Supreme Court of the United States. See, e.g., *Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 509-10 (7th Cir.1996); Garry v. Geils, 82 F.3d 1362, 1365-66 (7th Cir.1996)* ("the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment").

The *Rooker-Feldman* doctrine applies not only to claims and issues that were actually raised in the state court but also to claims that are inextricably intertwined with state court determinations. See *Feldman, 460 U.S. at 482-84 n. 16* (federal claims were "inextricably intertwined" with claims presented in state judicial proceeding on plaintiff's application for state bar admission); *Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir.1999)*.

After considering the parties' briefs on the issue, the court finds that subject matter jurisdiction over Witt's FDCPA claim for collection of the state court judgment is barred by the *Rooker-Feldman* doctrine. Witt is complaining of an injury inflicted on her by the state court judgment itself, and she could prevail on her claim only by showing that the state court judgment was erroneous.

In an attempt to avoid the *Rooker-Feldman* doctrine, Witt argues that she "is not taking issue with the actual amount of the treble damages awarded," but with the request for or collection of any charges in excess of those provided by law. Pl. Br. at 3-4. Yet, Witt acknowledges that she would need to show "that unlawful amounts were collected." *Id.* at 4. She could do that only by showing that the state court erred when it entered judgment against her. For these purposes, this court sees no meaningful difference between entry of an allegedly erroneous judgment and collection of that judgment. Court judgments are not intended to be meaningless pieces of paper. A party who wins a judgment is entitled to collect upon it or to enforce compliance with it. Efforts to collect or enforce a facially valid judgment are not invitations to relitigate the merits. (Witt also has not asked the state court to set aside its default judgment, nor did she contest enforcement of the judgment, as a party who questions the issuing court's jurisdiction may do.)

*3 Witt also relies on the Seventh Circuit's decision in *Long v. Shorebank Development Corp., 182 F.3d 548 (7th Cir.1999)*, a case that illustrates the complexity of the *Rooker-Feldman* doctrine. The plaintiff in *Long* alleged that her landlord and its attorneys had violated the **FDCPA** and deprived her of property without due process of law by obtaining a state court order evicting her from her home based on a false claim for past rent. Long also alleged that when she arrived at a state court to contest the matter, the landlord's attorney persuaded her to sign a document that Long thought was an agreement to a two-week delay to work out a settlement. The document was actually a consent to entry of judgment of eviction. After Long signed the document and left, the landlord's attorney obtained the eviction order from the state court. *182 F.3d at 552*.

The principal issue on appeal was whether Long's due process challenge to her eviction (with a claim for damages based on the severe consequences of her eviction) was barred by the *Rooker-Feldman* doctrine. The Seventh Circuit explained that she could not have suffered those losses but for the state court's eviction order, and she could not prevail without showing that the eviction order was invalid. *182 F.3d at 557*. These factors would have led to a finding of lack of jurisdiction under *Rooker-Feldman,* the court said, but for one unusual feature of state law-a feature that is not present in this case. In *Long,* the Seventh Circuit concluded that Illinois law would not have allowed Long to raise her claims in the state court eviction case. Illinois law would have treated her claims of due process and **FDCPA** violations as not germane to the action for forcible entry and detainer. *Id.* at 559-60. Because Long did not have a reasonable opportunity to raise her claims in the state court, the *Rooker-Feldman* doctrine did not bar them.

Plaintiff Witt tries to extend that reasoning in *Long* to claims that a state court defendant might have raised

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00081-LRS    ECF No. 26-2    filed 06/19/09    PageID.253    Page 15 of 16

Not Reported in F.Supp.2d                                                        Page 3
Not Reported in F.Supp.2d, 2002 WL 826372 (S.D.Ind.)
(Cite as: 2002 WL 826372 (S.D.Ind.))

but was not required to raise in the state court action. Pl. Br. at 5 (arguing that **FDCPA** claims are counterclaims, not defenses, and that Indiana law does not treat any counterclaims as compulsory in small claims court). That argument stretches the reasoning of *Long* too far, and accepting it would substantially cut back on the scope of the ***Rooker-Feldman*** doctrine. *Long* held that ***Rooker-Feldman*** did not apply because Long would not have been *allowed* to raise her claims in state court, not because she was not *required* to raise them. See 182 F.3d at 559-60. The *Long* court did not suggest that this narrow exception would be expanded further. Accord, *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, No. 00 C 4511, 2001 WL 1543516, at *10-11 (N.D.Ill. Nov. 30, 2001) (holding that ***Rooker-Feldman*** doctrine barred jurisdiction over **FDCPA** claims based on collection of state court judgments where plaintiffs failed to show they were barred from raising their contentions in state court).[FN1]

> FN1. In an unpublished decision that is squarely on point here, the Tenth Circuit affirmed dismissal under the ***Rooker-Feldman*** doctrine of **FDCPA** claims identical to Witt's. The Tenth Circuit read *Long* as recognizing only this very narrow exception to the doctrine. *Bisbee v. McCarty*, 3 Fed. Appx. 819, 824 (10th Cir.2001). The Tenth Circuit's Rule 36.3 permits citation of an unpublished decision if "(1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition." Both conditions are satisfied here.

*4 Witt also relies on the portion of *Long* that addressed claims under the **FDCPA** itself. The Seventh Circuit found that the alleged **FDCPA** violations were independent from the state court's eviction order. The alleged violations were for a false representation of the character, amount, or legal status of a debt, see 15 U.S.C. § 1692e(2)(A), and violations of § 1692f and § 1692g. The ***Rooker-Feldman*** doctrine did not bar jurisdiction over those claims, which the Seventh Circuit described as arising from violations that were "independent of *and complete prior to the entry* of the eviction order." 182 F.3d at 556 (emphasis added).

Plaintiff Witt's only timely claim also does not fall within that reasoning in *Long.* Her remaining **FDCPA** claim is for allegedly unlawful collection of a debt when she paid Westfield Acceptance to satisfy the state court judgment. That alleged violation is not independent of the state court judgment, and it obviously could not have occurred until after the state court entered its judgment. In Witt's case, it was the entry of the allegedly erroneous judgment that caused her alleged injuries, and she could not prevail upon her only timely claim without showing that the state court erred. Thus, the ***Rooker-Feldman*** doctrine bars this court from exercising subject matter jurisdiction over that claim and from deciding whether the state court judgment was correct or not. Accord, *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, 2001 WL 1543516, at *11 (applying *Long* to hold that ***Rooker-Feldman*** doctrine barred subject matter jurisdiction over **FDCPA** claims based on collection of state court judgments, but not over **FDCPA** claims arising before entry of the state court judgments).

Plaintiff Witt's remaining **FDCPA** claim must be dismissed for lack of subject matter jurisdiction. As a result of this ruling and the prior ruling, plaintiff Witt's claims against both Westfield Acceptance and Ryan in Count I for *seeking* allegedly unlawful treble damages are barred by the **FDCPA**'s one-year statute of limitations. Her claims against both defendants in Count I for *collecting* allegedly unlawful treble damages are dismissed for lack of subject matter jurisdiction.

Witt has also asserted parallel claims under the Indiana Uniform Consumer Credit Code, Ind.Code § 24-4.5-1-101 *et seq*. Her claims under state law are similarly subject to a one-year statute of limitations. See Ind.Code §§ 24-4.5-5-202 & -203(7). As a result, her state law claims arising prior to the state court's entry of judgment are barred by the statute of limitations. Her state law claims based on the collection of the state court judgment are barred by the ***Rooker-Feldman*** doctrine just as her parallel **FDCPA** claims are barred.

Plaintiff Allison's claims remain pending, however, as does her motion for class certification. Defendants shall respond to Allison's motion for class certification no later than April 30, 2002. No separate judgment shall be entered at this time.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**\*5** So ordered.

S.D.Ind.,2002.
Witt v. Westfield Acceptance Corp.
Not Reported in F.Supp.2d, 2002 WL 826372 (S.D.Ind.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Govt. Works.